**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE**

CARY CAMPBELL                                                                                               PLAINTIFF

V.                                                            NO. 3:10-CV-00321-S

UNIVERSITY OF LOUISVILLE, et al.                                        DEFENDANTS

**MEMORANDUM OPINION**

On March 28, 2011, this court heard oral argument regarding two discovery disputes that have arisen in this matter: whether there exists any attorney-client relationship between Mr. Campbell and University of Louisville professor Samuel Marcossen and whether Mr. Campbell may seek discovery from the University of Louisville regarding the circumstances surrounding Dean Cox's departure from the University. Having heard the arguments of counsel, and for the reasons stated below, the court determines that no attorney-client relationship ever existed between Mr. Campbell and Professor Marcossen and that Mr. Campbell is not permitted to seek discovery from the University of Louisville regarding the circumstances surrounding Mr. Cox's departure.[1]

**I.**

Mr. Campbell is a graduate of the University of Louisville's School of Law. During his time there he was denied status as a Kentucky resident and, accordingly, had to pay the higher tuition rates of a non-resident student. Mr. Campbell asserts that he should have been granted

---

[1]Counsel for the University has agreed, however, to provide Mr. Campbell with Dean Cox's last known contact information, and asserts that the University has no objection to Mr. Campbell's seeking discovery directly from Mr. Cox.

resident status and, accordingly, paid less tuition. Mr. Campbell claims that he spoke with a representative of the University, whom he thinks might have been Dean Cox, who "led him to believe" he would be granted in-state tuition rates. He was not.

**A.**

Mr. Campbell administratively appealed the University's decision to no avail. During the administrative appeals process, Mr. Campbell discussed his appeal with Samuel Marcossen, a professor at the School of Law, whom Mr. Campbell considered a mentor. The court takes judicial notice that Mr. Marcosson is a full-time professor of law, who does not maintain a private practice, and is not a member of the Kentucky bar. In addition to his lecturing responsibilities, Professor Marcossen served as the Chair of the Law School's Admission's Committee from 2005 to 2009, and assisted with the development of marketing materials and other documents relevant to the admissions process (including those that discussed the circumstances under which students would qualify for resident status).

Mr. Campbell's conversation with Professor Marcossen took place in 2007, at an orientation gathering for new law students at Fourth Street Live.[2] At least fifty persons were present at the gathering, but Mr. Campbell asserts that the conversation was nonetheless private and no one else was listening. The conversation lasted approximately twenty minutes. Mr. Campbell took no written notes of the conversation, but asked questions regarding his appeal and listened attentively to Professor Marcossen's replies. Mr. Campbell never paid Professor Marcossen a fee for the putative legal advice, never entered into a written contract for legal

---

[2]Fourth Street Live! is a collection of bars, restaurants, and entertainment venues in the heart of downtown Louisville.

services, and never requested any other legal assistance from Professor Marcossen following that conversation. For his part, Professor Marcossen never wrote Mr. Campbell any letter, memorandum, or e-mail summarizing their discussion or providing any follow up analysis.

The court finds that, contrary to Mr. Campbell's assertion, no attorney-client relationship existed between him and Professor Marcossen, and that Mr. Campbell could not reasonably believe one did. Mr. Campbell relies heavily on *Lovell v. Winchester*, 941 S.W.2d 466, 468 (Ky. 1997), which states:

> The lawyer/client relationship can arise not only by contract but also from the conduct of the parties. Courts have found that the relationship is created as a result of the client's reasonable belief or expectation that the lawyer is undertaking the representation. Such a belief is based on the conduct of the parties. The key element in making such a determination is whether confidential information has been disclosed to the lawyer.

Mr. Campbell places his emphasis on the last sentence of the passage, "[t]he key element is whether confidential information has been disclosed," and the court accepts his representation that confidential information was disclosed to Professor Marcossen. *Id.* That being said, the court cannot ignore the middle of the passage, which states that the client's belief that "the lawyer is undertaking the representation" (*i.e.*, entering into the attorney-client relationship, with all its professional and ethical obligations), must be *reasonable*. *Id.* (*see also Tipton v. Porter*, 2010 WL 3641233, *3+ (Ky. App. 2010); *Goldberg & Simpson, P.S.C. v. Goodman*, 2006 WL 2033997, *2+ (Ky. App. 2006); *U.S. v. Black*, 2005 WL 2897517, *1 (W.D. Ky. 2005) (Heyburn, J.)(none of which are cited for their precedential value, but rather to illustrate that the post-*Lovell* decisions in Kentucky state and federal courts all emphasize the reasonableness requirement and do not rely exclusively on any litmus test regarding confidential

communications).

Under the circumstances described by Mr. Campbell, his conversation with Professor Marcossen was not one to which any attorney-client relationship attached. It was, instead, merely a cocktail party conversation with a friendly professor. Nothing about the setting, the parameters of the discussion, or the post-conversation interaction between the two men indicated in any way that Mr. Campbell entered into either an express or implied contractual relationship for legal services. Consequently, the court holds that Mr. Campbell is not entitled to assert any attorney-client privilege with respect to any discovery the defendants may seek from Professor Marcosson.

**B.**

With respect to the issue of discovery regarding Dean Cox, the court finds that the University is not currently under any obligation to answer discovery regarding the circumstances surrounding Mr. Cox's departure from the University's employ. Mr. Campbell does not even know whether Mr. Cox was, in fact, the person who allegedly made representations to Mr. Campbell regarding his residency status. Even if he were, Mr. Campbell has proffered nothing other than unsupported vague rumor and innuendo that there might be any need to impeach Mr. Cox's testimony and, if so, that impeachment material exists.

The University has stated that it does not know where Mr. Cox currently resides, but has agreed to provide his last known address, and has no objection to Mr. Campbell contacting him or seeking discovery directly from him. The court agrees that this is a necessary first step. If Mr. Campbell finds Mr. Cox, and if Mr. Cox was indeed the one who made certain representations alleged by Mr. Campbell, and if Mr. Cox refuses to answer Mr. Campbell's

questions regarding whether Mr. Cox's departure from the University might have some bearing on his truthfulness, the court can revisit then whether it might be appropriate to request some limited information from the University.  In the meantime, it need not respond to any discovery requests from Mr. Campbell regarding Mr. Cox other than those that pertain to his years of employment with the University, his titles and job descriptions during his employ, and his last known contact information.

**II.**

For the reasons stated above, the court rules there is no attorney-client privilege with respect to Professor Marcossen, and that the defendant need not at the present disclose the reasons for the departure of Mr. Cox.

DATE:

cc: counsel of record